KAREN L. LOEFFLER
United States Attorney

STEVEN E. SKROCKI
YVONNE LAMOUREUX
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
        yvonne.lamoureux@usdoj.gov

Attorneys for Plaintiff

RECEIVED

2012 AUG 24 P 1:37

US ATTORNEY'S OFFICE
DISTRICT OF ALASKA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:11-cr-00028-01-RJB |
| | ) | |
| Plaintiff, | ) | **PLEA AGREEMENT** |
| | ) | |
| vs. | ) | |
| | ) | |
| LONNIE G. VERNON, | ) | |
| | ) | |
| Defendant. | ) | |

**Unless the parties jointly inform the Court in writing of any additional agreements, this document in its entirety contains the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.**

## I. TERMS OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11, WAIVER OF CLAIM FOR ATTORNEY'S FEES AND COSTS

### A. Terms of Agreement

The defendant agrees to plead guilty to Count 1 of the 8-count indictment in this case charging him with Conspiracy to Murder Federal Officials, in violation of 18 U.S.C. § 1117, and to admit the factual basis for his crime. The United States and the defendant agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the defendant shall be sentenced to a term of imprisonment of between 262 and 327 months, followed by 5 years of supervised release. The United States agrees to dismiss the remaining counts against the defendant of the First Superseding Indictment in this case after sentencing as detailed in Section V. The United States agrees not to prosecute the defendant further for any other offense related to the event that resulted in the charge contained in the indictment in this case. This agreement is also contingent on the plea to be entered by co-defendant Karen Vernon pursuant to the plea agreement filed contemporaneously herewith.

The parties further agree that the defendant's sentence in this case shall be imposed at the same time and in a consolidated sentencing proceeding with the

case of United States v. Lonnie Vernon, Case No. 3:11-cr-00022-RJB, and that the total sentence imposed for all of the defendant's counts of conviction, in both this case and Case No. 3:11-cr-00022-RJB, no matter how entered, will be between 262 and 327 months in prison, followed by five years of supervised release, with the terms of imprisonment in both cases to run concurrently.

The parties are free to make sentencing recommendations consistent with this agreement. Any agreements the parties have on sentencing recommendations and guideline applications are set forth in Section III. The defendant will waive all rights to appeal the conviction and sentence imposed under this agreement, and will waive all rights to collaterally attack the conviction and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea. The defendant further will waive all rights to appeal the conviction and sentence imposed in Case No. 3:11-cr-00022-RJB, and will waive all rights to collaterally attack the conviction and sentence in Case No. 3:11-cr-00022-RJB, except on the grounds of ineffective assistance of counsel.

### B. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (C) will control this plea agreement. Thus,

the defendant may withdraw from this agreement or his guilty plea only if the Court rejects the plea agreement.

The parties have reached additional agreements regarding the consolidated sentencing and this plea agreement: (1) the parties agree that if the Court sentences Lonnie Vernon to more than 327 months' imprisonment in Case No. 3:11-cr-00022-RJB, Lonnie Vernon may withdraw from this agreement and his guilty plea; (2) the parties agree that if the Court sentences Lonnie Vernon to less than 262 months' imprisonment in Case No. 3:11-cr-00022-RJB, the United States may withdraw from this agreement; (3) the parties agree that notice and a copy of this agreement will be filed in Case No. 3:11-cr-00022-RJB; and (4) because the parties intend this agreement to be part of a global resolution with Lonnie Vernon's co-defendant and wife, Karen Vernon, the parties agree that the United States may withdraw from this agreement if Karen Vernon does not enter a plea of guilty in accordance with the terms of her plea agreement or if she withdraws her plea prior to sentencing or at any time after the Court accepts the plea agreement and sentences her consistent with its terms.

//

//

Case 3:11-cr-00028-RJB    Document 118    Filed 08/27/12    Page 4 of 27

### C. Waiver of Claim for Attorney Fees and Costs

Because this is a negotiated resolution of the case, the parties waive any

claim for the award of attorney fees and costs from the other party.

## II. CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE, FORFEITURE

### A. Charges

The defendant agrees to plead guilty to Count One of the First Superseding

Indictment charging him with Conspiracy to Murder Federal Officials, in violation

of 18 U.S.C. § 1117.

### B. Elements

The elements of the charge to which the defendant is pleading guilty are as

follows:

   1) Between on or about February 4, 2011 and continuing up to on

or about March 10, 2011, there was an agreement between two or more persons to

murder officers and employees of the United States, in violation of 18 U.S.C. §

1114;

   2) The defendant became a member of the conspiracy knowing of

at least one of its objects and intending to help accomplish it; and

U.S. v. Vernon
3:11-cr-00028-01-RJB    Page 5 of 27

3) One of the members of the conspiracy performed at least one overt act after on or about February 4, 2011 for the purpose of carrying out the conspiracy.

The crime of murder of officers and employees of the United States, in violation of 18 U.S.C. § 1114, has four elements:

1) The defendant unlawfully killed one or more officers and employees of the United States;

2) The defendant did so with malice aforethought;

3) The killing or killings were premeditated; and

4) The victim or victims were killed while engaged in his/her official duties, or on account of the performance of his/her official duties as an officer or employee of the United States.

## C.    Factual Basis

The defendant admits the truth of the allegations in Count One of the First Superseding Indictment and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty plea and for the imposition of the sentence:

//

### 1.    The IRS Liens and Foreclosure of the Vernon Residence

Defendant Lonnie G. Vernon ("L. Vernon") and Karen L. Vernon ("K. Vernon") (collectively, "the Vernons") were residents of Salcha, Alaska.  In 2008 the Internal Revenue Service ("IRS")  recorded federal tax liens against L. Vernon and K. Vernon as a result of their failing to pay taxes to the IRS over the course of several years.  On July 17, 2009, the United States filed a civil tax case against L. Vernon and K. Vernon in the United States District Court for the District of Alaska alleging that they owed approximately $165,750 and seeking to foreclose its federal tax liens against certain real property belonging to L. Vernon and K. Vernon.  The United States sought to reduce the tax assessments to judgment and foreclose its liens, sell the property belonging to L. Vernon and K. Vernon, and apply the proceeds towards their tax liabilities.  This case was captioned United States v. Lonnie G. Vernon and Karen L. Vernon, Case No. 4:09-cv-00038-RRB. The case was assigned to United States District Judge Ralph R. Beistline.

On September 15, 2009, as part of their civil tax case, L. Vernon and K. Vernon filed a Counterclaim against the United States, asserting in part that they are not taxpayers or citizens of the United States obligated to pay taxes.  In their Counterclaim, L. Vernon and K. Vernon describe some of their interactions

with an IRS Revenue Officer, Janice Stowell, acting in her official capacity, related to their outstanding taxes. Janice Stowell is a duly commissioned Revenue Officer of the Small Business/Self-Employed Division of the IRS.

In the civil tax case, on October 27, 2009, the United States moved to dismiss the Vernons' Counterclaim. On December 28, 2009, Judge Beistline issued an order granting the United States' motion and dismissed the Vernons' counterclaim. The Order stated in part that the "Vernons' challenges to the promulgation of IRS regulations is therefore misplaced and irrelevant. The remaining arguments made by the Vernons are frivolous and have been uniformly rejected by the courts." Docket 19. On January 19, 2010, Judge Beistline denied the Vernons' motion to reconsider the December 28, 2009 order.

In April 2010, the Vernons also filed a motion to dismiss the United States' Complaint. The Vernons argued in part that Judge Beistline had acted without jurisdiction. The District Court, per Judge Beistline, denied the Vernons' motion on June 25, 2010. The Vernons sought reconsideration of this order, which the District Court, per Judge Beistline, denied on July 6, 2010. The Vernons and the United States also had discovery disputes which were brought before Judge Beistline. For example, the District Court, per Judge Beistline, granted the United

U.S. v. Vernon
3:11-cr-00028-01-RJB                    Page 8 of 27

States' Motion to Compel Discovery Responses, denied the Vernons' Motion to Compel Discovery Responses, granted the United States' Motion for Sanctions for Discovery Violations, and ordered the Vernons to appear for their depositions. On September 30, 2010, the Vernons filed a Motion to Clarify, stating that "Judge Beistline has foreclosed any defense to be offered by the Vernons by all of his actions to date as identified *supra*." (Case No. 4:09-cv-00038-RRB, Docket 50, pp 3-4). The District Court, per Judge Beistline, denied the Vernons' motion.

On December 27, 2010, the Vernons filed a motion to amend their pleadings. On January 11, 2011, Judge Beistline issued an order denying the Vernons' request to amend their pleadings, indicating that the motion was irrelevant and immaterial. Thereafter, on February 10, 2011, the United States filed a motion for summary judgment. Attached to the motion was a declaration of Janice Stowell detailing the actions she took during the performance of her official duties as an IRS revenue officer. (Case No. 4:09-cv-00038-RRB, Docket 72). On February 11, 2011, Judge Beistline issued an order requiring the Vernons to respond to the motion for summary judgment by March 7, 2011. (Case No. 4:09-cv-00038-RRB, Docket 76). The order advised the Vernons that the motion for

summary judgment was an important motion, one that could end the case in favor of the Government.

### 2. The Vernons' Conspiracy to Murder U.S. District Court Judge Ralph R. Beistline and IRS Revenue Officer Janice Stowell

Because of and in response to the above, L. Vernon and K. Vernon developed a plan and agreed to murder United States District Court Judge Ralph R. Beistline and IRS Revenue Officer Janice Stowell, while those officers and employees were engaged in and on account of the performance of their official duties. L. Vernon and K. Vernon joined together in this conspiracy knowing that the object of the conspiracy was to murder Judge Beistline and IRS Revenue Officer Stowell and intending to work together to help accomplish it.

On February 4, 2011, L. Vernon traveled from Fairbanks to Anchorage with a confidential informant working for the government and, while in Anchorage, sought to obtain a silencer to use to further the conspiracy. While in Anchorage, L. Vernon indicated that he had a "spot" for the silencer, referring to Judge Beistline. During the drives to and from Anchorage on February 4 and 6, 2011, L. Vernon discussed and described the status of his civil tax case and indicated that he was going to kill the female IRS agent and federal judge handling his case, meaning IRS Revenue Officer Janice Stowell and United States District Court

Judge Beistline. In those same conversations, L. Vernon indicated that he knew about Judge Beistline's brother and his daughter, knew they had a cabin, and knew the location of the cabin. L. Vernon also said that he was going to kill Judge Beistline's wife and his children. L. Vernon also described how he had designed his house as an ambush site for federal officers or employees who may come to take his house and if they showed up, L. Vernon would be able to kill them.

On February 15, 2011, L. Vernon and K. Vernon met with the confidential informant and another individual. L. Vernon told them that he was going to use the silencer to kill Judge Beistline, that he knew where the Beistline family cabin is, and that he was going to kill the female IRS agent. On February 21, 2011, L. Vernon spoke with the confidential informant and placed an order for a silencer. On February 25, 2011, L. Vernon told the confidential informant that he had the money to purchase the silencer and stated that he planned to use the silencer to kill the IRS revenue officer.

On March 3, 2011, L. Vernon and K. Vernon met with the confidential informant. L. Vernon and K. Vernon indicated that they would be interested in purchasing hand grenades. L. Vernon and K. Vernon offered to trade K. Vernon's jewelry in exchange for the grenades.

On March 7, 2011, L. Vernon and K. Vernon met with the confidential informant. The Vernons said that they had the money for their silencer on hand and that they wanted to pay for it that day. L. Vernon said that he was buying the silencer to use on Judge Beistline's daughter and her children. L. Vernon said he planned to kill all the Beistlines and wanted the confidential informant's help. K. Vernon handed the confidential informant a piece of paper with two addresses on it for the Beistline's residences. K. Vernon showed the confidential informant a map with the highlighted routes showing how to get to the Beistline's residences. L. Vernon and K. Vernon discussed the logistics of executing their plan at both residences. L. Vernon said that they needed to conduct more surveillance after they purchased their silencer.

On March 10, 2011, L. Vernon and K. Vernon purchased and received a pistol equipped with a silencer. During that transaction, L. Vernon and K. Vernon also purchased and received two hand grenades, not knowing at the time that the grenades were provided by the FBI and were inert. K. Vernon and L. Vernon handed the cash for the purchases to the confidential informant. L. Vernon retained the pistol with the silencer and K. Vernon placed the grenades into her

purse. Both L. Vernon and K. Vernon were carrying loaded firearms during the weapons transaction.

In the vehicle that the Vernons drove to the weapons transaction on March 10, 2011, the Vernons had the map with post-it notes of Beistline's family's addresses and the routes to these locations highlighted on the map. The Vernons also had in their vehicle numerous letters from the Vernons addressed to friends and family, explaining that if they are receiving the letter, it is because the Vernons are no longer living. The letters describe the Vernons' long dispute with IRS and how the Vernons pray that their deaths are not in vain. The letter concludes with "We will not FREELY GIVE our home, land and personal property to this tyrant, nor will we die cowards, licking their jack-boots. We did not go down without resistance and standing for our rights, the lead deficiency of those who came to take ours from us, was corrected as best we could." The Vernons also had body armor, two assault rifles, additional handguns and several hundred rounds of ammunition in the vehicle they drove to the weapons transaction.

//

//

Case 3:11-cr-00028-RJB    Document 118    Filed 08/27/12    Page 13 of 27

L. Vernon and K. Vernon intended to use their firearms, silencer, and hand grenades to murder Judge Beistline and IRS Revenue Officer Janice Stowell in retaliation for and on account of the performance of their official duties as officers and employees of the United States.

## D.    Statutory Penalties and Other Matters Affecting Sentence

### 1.    Statutory Penalties

The statutory penalties applicable to the charge to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea, are as follows:

Count 1: Conspiracy to Murder Federal Officials, in violation of 18 U.S.C. § 1117

    1)    a maximum of life imprisonment;

    2)    a maximum $250,000 fine;

    3)    a $100 mandatory special assessment; and

    4)    a maximum of five years supervised release.

### 2.    Other Matters Affecting Sentence

#### a.    Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's

U.S. v. Vernon
3:11-cr-00028-01-RJB                    Page 14 of 27

sentence: 1) pursuant to Comment 7 of U.S.S.G. § 5E1.2, the Court may impose an additional fine to pay the costs to the government of any imprisonment and supervised release term; 2) pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 3) upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release; 4) the Court may order the defendant to pay restitution pursuant to 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1.

### b.     Payment of Special Assessment

The defendant agrees to pay the entire special assessment in this case on the day the Court imposes the sentence.  All payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

### c.     Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other

forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury.

### E.    Forfeiture

There are no assets to be forfeited under this agreement.

### F.    Restitution

There is no agreement concerning restitution.

## III.  ADVISORY UNITED STATES SENTENCING GUIDELINES; GUIDELINE APPLICATION AGREEMENTS; SENTENCING RECOMMENDATIONS

### A.    Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Commission Guidelines [U.S.S.G.] as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The U.S.S.G. do not establish the statutory maximum or minimum sentence applicable to the offenses to which the defendant is pleading guilty. The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G. However, if the Court accepts this plea agreement, the Court is bound to the conditions set forth herein.

### B.    Guideline Application Agreements

The parties have no agreements on any guideline applications unless set forth below in this section. The United States Probation Office will prepare the

U.S. v. Vernon
3:11-cr-00028-01-RJB                    Page 16 of 27

defendant's pre-sentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G.

### 1. Base Offense Level

The parties agree that the base offense level is 33 under U.S.S.G. § 2A1.5.

### 2. Official Victim

The parties agree that a 6-level enhancement is applicable under U.S.S.G. § 3A1.2(b) because Lonnie Vernon and Karen Vernon conspired to murder officials of the United States because of the officials' roles in the civil tax case against Lonnie and Karen Vernon.

### 3. Acceptance of Responsibility

The parties agree that the defendant does not satisfy the criteria set out in U.S.S.G. § 3E1.1 and that the defendant has not timely accepted responsibility for his actions and is not entitled to a downward adjustment for acceptance of responsibility.

### C. Sentencing Agreements

The United States and the defendant agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the defendant shall be sentenced to a term of imprisonment of between 262 and 327 months, followed by 5 years of supervised release. The parties are free to recommend to the Court their respective positions

on the appropriate sentence within the range of 262-327 months based on the stipulated facts set forth in Section II C, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory U.S.S.G., and the sentencing factors set forth in 18 U.S.C. § 3553.

The parties further agree to recommend a sentence of a term of imprisonment of between 262 and 327 months at the consolidated sentencing hearing in the case of United States v. Lonnie Vernon, Case No. 3:11-cr-00022-RJB to run concurrent to the sentence imposed in this case.

Furthermore, if defendant withdraws his plea prior to sentencing, or at any time after the Court accepts the plea agreement and sentences him consistent with its terms, he agrees the facts that he admits in the Factual Basis portion of this agreement shall be admitted as stipulations in any trial or sentencing that may follow. The foregoing provision acts as a modification, and express waiver, of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11. In the event that the Court rejects the plea agreement, the factual basis in Section II C of the plea agreement may not be used by the United States for any purpose in any trial or sentencing that may follow.

//

//

U.S. v. Vernon
3:11-cr-00028-01-RJB                    Page 18 of 27

## IV.   WAIVER OF TRIAL, APPELLATE RIGHTS, AND COLLATERAL ATTACK RIGHTS

### A.   Trial Rights

Being aware of the following, the defendant waives these trial rights:

-- If pleading to an information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

-- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

-- The right to object to the composition of the grand or trial jury;

-- The right to plead not guilty or to persist in that plea if it has already been made;

-- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

-- The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial -- the defendant is not waiving the right to

Case 3:11-cr-00028-RJB    Document 118    Filed 08/27/12    Page 19 of 27

have counsel continue to represent the defendant during the sentencing phase of this case;

-- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

-- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

-- The right to contest the validity of any searches conducted on the defendant's property or person.

**B.     Appellate Rights**

The defendant waives the right to appeal the conviction resulting from the entry of guilty plea to the charge set forth in this agreement. The defendant further agrees that if the Court imposes a sentence consistent with the terms of this plea agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes – including terms or conditions of supervised release, and any fines or restitution.

The defendant further waives the right to appeal the conviction resulting from the guilty jury verdicts in United States v. Lonnie Vernon, Case No. 3:11-cr-

00022-RJB. The defendant further agrees that if the Court imposes a sentence in Case No. 3:11-cr-00022-RJB that does not exceed the statutory maximum penalties – as set forth in section II D above in this agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes – including forfeiture (if applicable) or terms or conditions of supervised release, and any fines or restitution ordered in Case No. 3:11-cr-00022-RJB. The defendant agrees that notice and a copy of this agreement, including the defendant's waiver of appellate rights agreed to herein, will be filed in Case No. 3:11-cr-00022-RJB.

### C.     Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the resulting convictions and/or sentence – including forfeiture (if applicable) or terms or conditions of supervised release, and any fines or restitution – the Court imposes in this case and Case No. 3:11-cr-00022-RJB. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to the conviction or sentence alleging ineffective assistance of counsel – based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty plea. The defendant agrees

U.S. v. Vernon
3:11-cr-00028-01-RJB                        Page 21 of 27

that notice and a copy of this agreement, including the defendant's waiver of collateral attack rights agreed to herein, will be filed in Case No. 3:11-cr-00022-RJB.

## V.    ADDITIONAL AGREEMENTS BY UNITED STATES

In exchange for the defendant's guilty plea and the Court's acceptance of the defendant's plea and the terms of this agreement, the United States agrees to dismiss Counts 2-8 of the First Superseding Indictment in this case, and agrees that it will not prosecute the defendant further for any other offense – now known – arising out of the subject of the investigation related to the charges brought in the indictment in this case and the defendant's admissions set forth in Section II C. Provided, however, if the defendant's guilty plea is rejected, withdrawn, vacated, reversed, or set aside, or if the defendant's sentence or conviction is vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated as well as for perjury and false statements.

## VI.    ADEQUACY OF THE AGREEMENT

Pursuant to Local Criminal Rule 11.2 (d)(7) and (8), this plea agreement is

U.S. v. Vernon
3:11-cr-00028-01-RJB                     Page 22 of 27

appropriate and conforms with the sentencing goals that would otherwise be applicable to the defendant's case if the defendant had gone to trial and had been convicted on all counts in the charging instrument.

## VII. THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA AGREEMENT

I, LONNIE G. VERNON, the defendant, affirm this document contains all of the agreements made between me – with the assistance of my attorney – and the United States regarding my plea. There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, I and the United States will jointly inform the Court in writing before I enter my guilty plea.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my plea. If there were, I would so inform the Court.

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure

Case 3:11-cr-00028-RJB    Document 118    Filed 08/27/12    Page 23 of 27

on my part to fulfill these obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offense to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my plea. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

U.S. v. Vernon
3:11-cr-00028-01-RJB          Page 24 of 27

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea. My attorney and I have discussed all possible defenses to the charges to which I am pleading guilty. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the U.S.S.G. may have on my sentence.

//

//

//

//

//

//

//

//

//

//

//

U.S. v. Vernon
3:11-cr-00028-01-RJB                Page 25 of 27

Based on my complete understanding of this plea agreement, I therefore wish to enter a plea of guilty to Count 1 of the First Superseding Indictment, which charges me with Conspiracy to Murder Federal Officials.

DATED: _8-23 12_ _____

LONNIE G. VERNON
Defendant

As counsel for the defendant, I have communicated and fully discussed all plea offers with the defendant. I have discussed the terms of this plea agreement with the defendant, have fully explained the charge to which the defendant is pleading guilty and the necessary elements, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competency to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: _8/23/12_ _____

M.J. HADEN
Attorney for Lonnie G. Vernon

U.S. v. Vernon
3:11-cr-00028-01-RJB                Page 26 of 27

On behalf of the United States, the following accept Lonnie G. Vernon's offer to plead guilty under the terms of this plea agreement.

DATED: 8/24/12

STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

DATED: 8/24/12

YVONNE LAMOUREUX
Assistant U.S. Attorney
United States of America

DATED: 8/27/2012

KAREN L. LOEFFLER
United States Attorney
United States of America

U.S. v. Vernon
3:11-cr-00028-01-RJB                     Page 27 of 27